# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **LAMONE M. JOHNSON,** a/k/a Marylin Monae Porter, | ) ) ) |
| **Plaintiff,** | ) ) ) |
| v. | ) CIV-20-764-R ) |
| **INTERIM WARDEN, JHCC LUKE PETIGREW et al.,** | ) ) ) ) |
| **Defendants.** | ) |

## ORDER

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging violation of her civil rights because Defendants are allegedly interfering with her right to marry another inmate, Marquis Porter. Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) the matter was referred to United States Magistrate Judge Amanda Maxfield Green for preliminary review. On December 3, 2021, Judge Green issued a Report and Recommendation wherein she recommended that the Defendants be granted summary judgment because Plaintiff failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(a), prior to filing suit. The matter is currently before the Court on Plaintiff's timely objection to the Report and Recommendation, Doc. No. 41, which gives rise to the Court's obligation to undertake a *de novo* review of those portions of the Report and Recommendation to which Plaintiff makes specific objection. Having conducted this *de novo* review, the Court finds as follows.

Plaintiff's Amended Complaint names three Defendants, Joseph Harp Correctional Center Warden Luke Pettigrew, Case Manager A. Monden, and Department of Corrections Chaplain Leo Brown. Plaintiff contends the Defendants infringed her right to marry. (Doc. No. 15). Ms. Porter, an inmate, wishes to marry inmate Marquis Porter, whom she first met when they were cellmates at Davis Correctional Facility. She asserts claims under the Fourteenth Amendment that her substantive due process and equal protection rights have been violated by the Defendants' failure to grant permission for the two to wed and failure to facilitate the wedding.[1] Judge Green ordered Plaintiff's custodian to file a special report and to respond to the Amended Complaint. Defendants Pettigrew and Monden filed a joint Motion to Dismiss. Defendant Brown subsequently filed a similar motion. The motions raised a number of defenses, including the failure to exhaust as required by the PLRA. Plaintiff responded to the motion filed by Defendants Pettigrew and Monden, but Judge Green construed her response as directed to both motions. In responding to the motion to dismiss as it addressed exhaustion, Plaintiff mentioned only one grievance -- No. 20-065. She admitted, however, that she "did not exhaust this claim. However, Plaintiff included this [request to staff] RTS in her complaint as evidence to prove that the Defendants did not help her meet certain requirements as such as obtaining a[n] ordained person to marry two LGBT people." (Doc. No. 37, p. 7)(citation omitted). Noting that Plaintiff did not address the other grievances, the Report and Recommendation nevertheless addressed each of the three grievances that Plaintiff unsuccessfully attempted to pursue to the

---

[1] Plaintiff is no longer incarcerated at the Joseph Harp Correctional Center and is currently housed at the Oklahoma State Penitentiary.

2

Administrative Review Authority. Because she considered documents beyond the scope of the pleadings, Judge Green concluded the motions to dismiss should be construed as motions for summary judgment and further that Plaintiff had not properly exhausted her available administrative remedies. As a result, she recommends the action be dismissed without prejudice.

Plaintiff does not contend that she properly exhausted Grievance Nos. 20-065, 20-090, or 20-131, the three addressed by the Report and Recommendation.[2] Rather, she contends that she was prevented from properly exhausting her claims by Department of Corrections personnel, thereby rendering those remedies unavailable. With regard to Grievance No. 20-065, at page 2 of her objection Plaintiff asserts that Warden Pettigrew's assistant is responsible, in part, for Plaintiff's inability to properly exhaust her administrative remedies. Plaintiff submitted a Request to Staff, JHCC 12799, on April 20, 2020. Therein she requested a copy of her grievance log, noting that she had only recently transferred to JHCC and seeking information from her past facilities. (Doc. No. 41-10). The grievance coordinator responded that she had no grievances for her at JHCC during the past twelve months and that it was her responsibility to contact those facilities. (*Id.*). Plaintiff contends that the refusal to provide her with a grievance log prevented her from successfully completing any of her attempts at exhaustion because she needed that information to fulfill the obligations of an inmate on grievance restriction, a status imparted on Plaintiff on November 25, 2019. Such status requires an inmate to list all grievances

---

[2] She does not rely on any other attempts at exhaustion to support her obligation under the PLRA.

and results from the twelve months prior to the filing of the current grievance. As set forth below, Plaintiff never successfully submitted such an affidavit because she omitted a sensitive grievance, Grievance No. 20-85, submitted to the administrative review authority, but never returned to her.

On May 6, 2020, Plaintiff submitted Request to Staff (JHCC 12971) regarding her desire to marry. She specifically sought approval of her private wedding ceremony and assistance in obtaining a marriage license. (Doc. No. 28-19, p. 4). The request was directed to the chaplain, who responded that the necessary forms had been provided and that Plaintiff needed to complete the form, send it to her fiancé for signature and then submit the form to the agency chaplain. *Id.* Dissatisfied with this response, Plaintiff submitted Grievance No. 20-65 to the warden requesting that he "approve my private wedding ceremony with my fiancé & help me with obtaining a marriage license as OP-090128 states." *Id.* p. 2. The warden provided Plaintiff with a form response indicating no answer would be provided because Plaintiff had not included a notarized affidavit listing her grievances for the past year. *Id.* p. 6. The warden further noted that the grievance was on the wrong form, and further that Plaintiff had been provided the appropriate form for marriage by the chaplain. *Id.* Plaintiff proceeded to the next step in the administrative process, appeal to the administrative review authority. Doc. No. 28-20, p. 2. Her request was received by the ARA on June 12, 2020. Plaintiff included an affidavit that purported to contain the grievances filed in the prior year. Doc. No. 28-20, pp. 4-5. Mark Knutson, director's designee, returned the appeal to Plaintiff, nothing that proper documentation was not included, that her grievance affidavit was not accurate, and that she could resubmit the

appeal to the ARA within ten days. *Id.* at p. 6. Plaintiff resubmitted the appeal to the ARA, and it was rejected on August 12, 2020, because it had been resubmitted out of time and her affidavit was not accurate.[3] (Doc. No. 28-29, p. 6).

Plaintiff's first challenge to the Report and Recommendation addresses the sufficiency of her affidavit in support of Grievance No. 20-65. She contends that she could not submit an accurate affidavit in support of her grievance because the warden's assistant refused to provide her with list of grievances from Plaintiff's prior facility. The missing grievance on each of Plaintiff's affidavits was sensitive Grievance No. 20-85, filed directly with the Administrative Review Authority. Plaintiff contends that Ms. Caskey's failure to provide a grievance log rendered her unable to comply with Department of Corrections policy because the sensitive grievance was not returned to her and she was not informed until she received the Defendants' motion as to what grievance was missing.

The Court rejects this argument because the missing information on the grievance log, a May 2020 sensitive grievance, post-dates Plaintiff's April 2020 request to Ms. Caskey. According to the records submitted by Defendants the omitted sensitive grievance was filed on May 12, 2020, after Plaintiff submitted the request to staff that evolved into Grievance No. 20-065. Even if Ms. Caskey had provided the grievance log requested by Plaintiff in April 2020, it would not have contained information about the May 12, 2020 sensitive grievance. Accordingly, Caskey's failure to provide a grievance log in April 2020 was not the cause of Plaintiff's inability to properly exhaust Grievance No. 20-065.

---

[3] Plaintiff did fix one error with her affidavit, which was required by OP-090124 § X.B.2.a to be signed on each page.

Plaintiff makes no other arguments regarding Grievance No. 20-065 and accordingly, the Court finds no basis in the objection for concluding that the actions of employees of the Department of Corrections rendered the process unavailable to her.

Plaintiff's next objection addresses the Magistrate Judge's conclusion with regard to Grievance No. 20-131, which was returned to her by the administrative review authority because she did not submit the affidavit required for those on grievance restriction.[4] (Doc. No. 28-24, p. 4). Plaintiff had submitted the affidavit with her grievance, but not with her appeal to the ARA. (Doc. No. 28-23, pp. 6-7). Plaintiff contends that, because the form for appeal to the administrative review authority specifically states that no additional documents should be appended thereto, the ARA was incorrect in rejecting her appeal on this basis. *See e.g.* Doc. No. 28-24, p. 2. She further argues that because OP-090124 dictates that the ARA is to be provided certain documents in electronic form, specifically the RTS, Inmate/Offender Grievance and Grievance Decision from Reviewing Authority, that Mark Knutson, who rejected the ARA appeal, knew she had filed an affidavit with her grievance.

Although the form utilized to submit an appeal to the ARA indicates no additional documents should be appended, Plaintiff was clearly aware of the Policy requirement that mandated the affidavit, because she had submitted one with her prior appeal to the ARA for Grievance No. 20-090. Additionally, the grievance policy, OP-090124(VIII)(B)(1)(d), which addresses appeals to the administrative review authority, provides, "[n]o additional

---

[4] The July 14, 2020 Request to Staff, number 13372, requested that the warden approve correspondence between Plaintiff and her fiancé so that the fiancé could be provided the marriage application for completion. The warden denied the request and Plaintiff filed an appeal with the reviewing authority, which included the required affidavit. Although the affidavit did not include the sensitive grievance the reviewing authority did not reject the request on that basis, rather it addressed the merits. (Doc. No. 28-23, pp. 6-7, p. 8). This rejection led Plaintiff to the ARA.

attachments, except an affidavit if required, are allowed." Doc. 28-16, p. 14. The ARA notifies the facility of the appeal. The facility then provides the underlying documentation, specifically the RTS, grievance and response. This policy does not excuse an inmate from providing an affidavit to the ARA.[5] Accordingly, Plaintiff cannot support her contention that Department of Corrections' employees prevented her from exhausting properly because she failed to follow the requirements of the policy. Finally, and critically, Plaintiff was given an opportunity to correct the absence of the affidavit but chose not to do so. Ultimately it was Plaintiff's failure to resubmit her appeal to the ARA that terminated the unsuccessful exhaustion process and her decision precludes her from successfully arguing that Department of Corrections employee interference rendered administrative remedies unavailable.

With regard to Grievance No. 20-090, Plaintiff complains that it was incorrectly rejected by the ARA as untimely, because she delivered it to the mailroom but staff were working remotely due to a covid outbreak at JHCC. She asks that the Court obtain "clock in and clock out" documents so she can prove that she timely submitted her ARA appeal to support her contention that the administrative remedies were unavailable to her. Although Defendants' Motion to Dismiss addressed all three of the grievances set forth above, Plaintiff's response thereto was limited to addressing 20-065. In her response to the Motion to Dismiss before Judge Green, Plaintiff did not tender any arguments regarding

---

[5] Due to the lapse of time between filing a grievance and receiving and appealing a response, an inmate could conceivably file additional grievances, and therefore it is not a foregone conclusion that an affidavit submitted to the reviewing authority in support of a grievance would be the same as one subsequently submitted to the ARA in appealing denial of that same grievance.

the absence of mailroom employees from the JHCC which allegedly resulted in the late submission of her documents to the ARA. Issues raised for the first time in an objection to the Report and Recommendation are deemed waived under the firm waiver rule. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *United States v. Garfinkle*, 261 F.3d 1030, 1030-31 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

Additionally, even if the argument was not waived, the only issue addressed by Grievance No. 20-90 was the failure of officials to provide Plaintiff with a list of LGBT-friendly clergy to perform a wedding; the grievance did not address the underlying constitutional issue -- whether the Department of Corrections employees or its policies unconstitutionally infringe on Plaintiff's right to marry. The request did not seek permission to wed, but rather sought to compel information that would be needed once the request had been granted. Accordingly, even if exhausted the claim would not provide a basis for § 1983 relief.

With regard to ARA-20-085, the sensitive grievance allegedly omitted from Plaintiff's affidavits, Plaintiff argued in response to the motion to dismiss that the ARA neither answered nor returned the grievance and therefore she could not be aware thereof in completing her affidavit. As set forth above with regard to Plaintiff's appeal of the denial of grievance 20-131, Plaintiff did not resubmit her appeal as directed and therefore cannot argue that the insufficiency of the affidavit was the result of actions by Department of Corrections personnel in failing to return sensitive Grievance 20-85. As to Grievance 20-90, the process terminated when Plaintiff failed to meet the deadline for submitting her

appeal to the ARA, not because of the insufficiency of the affidavit. Finally, on Grievance No. 20-65, Plaintiff's attempt to re-submit the appeal to the ARA was untimely. Although the ARA noted that the affidavit remained deficient, it also cited the untimeliness as a basis for returning the re-submitted final appeal unanswered.[6]

For the reasons set forth herein, and with the caveats set forth above, the Court hereby adopts the Report and Recommendation, construes the motions to dismiss as motions for summary judgment and grants the motions. This action is dismissed without prejudice in light of Plaintiff's failure to exhaust available administrative remedies prior to initiating this action.[7]

**IT IS SO ORDERED** this 10th day of January 2022.

*/s/ David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[6] In the Report and Recommendation Judge Green concluded that Plaintiff should have known about what grievance was missing from her affidavit based on the "sticky note" attached to the affidavit and identifying the missing sensitive grievance. In response to the Motion to Dismiss, Plaintiff submitted an affidavit indicating that she was unaware of the number of the missing grievance until she was served with the motion to dismiss. (Doc. No. 37-2). She elaborates in her objection, noting that upon rejection of an appeal only the form indicating the basis for rejection is provided to the inmate. Accordingly, the Court rejects Judge Green's conclusion as it relates to her finding that Plaintiff should have been aware that the deficiency in his grievance affidavit was the absence of Grievance No. 20-085. This conclusion, however, does not alter the outcome of the Defendants' motions.

[7] Plaintiff argues throughout her objection that officials as JHCC did not want LGBTQ inmates to marry and set up roadblocks to avoid having to approve such marriages. The Court's ruling is limited to whether Plaintiff exhausted her available administrative remedies without regard to the merits of her underlying claim.